Leatrice **SEINFELD**, Plaintiff–Appellant

v.

**Paul E. GRAY, John F. McDonnell, John M. Shalikashvili, Harry C. Stonecipher, John Biggs, John E. Bryson, Rozanne L. Ridgway, Philip M. Condit, Kenneth M. Duberstein, W. James McNerney, Lewis E. Platt, The Boeing Company, Defendants–Appellees.**

No. 04–3475–CV.

United States Court of Appeals, Second Circuit.

Argued: Feb. 14, 2005.

Decided: April 14, 2005.

Appearing for Plaintiff–Appellant: A. Arnold Gershon, Esq., New York, NY.

Appearing for Defendants–Appellees Paul E. Gray, John F. McDonnell, John M. Shalikashvili, Harry C. Stonecipher, John Biggs, John E. Bryson, Rozanne L. Ridgway, Philip M. Condit, Kenneth M. Duberstein, W. James McNerney, and Lewis E. Platt: David H. Kistenbroker, Esq., Joel W. Sternman, Esq. (on the brief), Pamela G. Smith, Esq. (on the brief), Theresa L. Davis, Esq. (on the brief), Katten Muchin Zavis Rosenman, New York, NY.

Appearing for Defendant–Appellee The Boeing Company: Barry M. Kaplan, Esq. (on the brief), Douglas W. Greene, Esq. (on the brief), Perkins Coie LLP, New York, NY, Nancy E. Delaney, Esq. (on the brief), Curtis, Mallet–Prevost, Colt & Mosle LLP, New York, NY.

Before: SOTOMAYOR and KATZMANN, Circuit Judges, and CEDARBAUM, District Judge.[1]

1. Hon. Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

KATZMANN, Circuit Judge.

Plaintiff-appellant Leatrice Seinfeld appeals from the judgment of the United States District Court for the Southern District of New York (Brieant, *J.*), granting the defendants' motion to dismiss the Verified Amended Complaint under Fed. R.Civ.P. 12(b)(6). Seinfeld argues that a compensation plan proxy statement issued by The Boeing Company ("Boeing") violates SEC regulations. According to Seinfeld, the proxy statement is misleading because it does not inform investors that the number of options that could be issued under the plan is not limited by the plan's restriction on the number of shares of stock available for issuance under the plan. For the reasons that follow, we affirm the judgment of the district court.

### Background

Unless otherwise noted, the following facts are based on the allegations in the Verified Amended Complaint.

In March 2003, Boeing's Board of Directors solicited proxies to approve Boeing's 2003 Incentive Stock Option Plan ("the Plan") at Boeing's 2003 annual meeting. The Plan permits the grant of stock options to Boeing's employees and directors.

Leatrice Seinfeld, the plaintiff-appellant, argues that the disclosure associated with the Plan—the proxy statement—was materially misleading. Stockholders were not specifically informed that the limit on the number of shares available for issuance under the Plan did not constrain the number of options that Boeing might issue under the Plan to employees and directors.

Mainly, this was because the options could be settled in cash, allowing Boeing to issue options without ever requiring that shares issue. Seinfeld asserts that Boeing failed to state the true cost of the Plan by not specifically informing investors that the number of options that could be issued under the Plan was unconstrained by any limit on the number of shares that could be issued. The defendants-appellees respond that no investor would have read the proxy statement to mean that there was such a limit on the number of options that could be issued under the Plan, and argue that they were not required to state the number of options that might be issued.

The proxy statement explains that:

The aggregate number of shares of Boeing stock available for issuance under the 2003 Plan will not exceed 30 million, which represents approximately 3.75% of the currently outstanding shares of Boeing stock eligible to vote as February 28, 2003. The Board of Directors, in its sole discretion, may increase the aggregate number of shares of Boeing stock available for issuance under the 2003 Plan by an additional three million shares if, in the future, Boeing acquires another company and substitutes Awards for the acquired company's outstanding stock option or equity award commitments or otherwise grants Awards in connection with the acquisition.

The proxy statement includes additional language clarifying, *inter alia*, the status of shares issued in support of an option or other award if the award is not exercised: [2]

---

**2.** A portion of the proxy statement pertains to the Compensation Committee's discretionary powers in the case of stock splits, spin-offs, or certain other changes to Boeing's corporate or capital structure. Under these circumstances, the Committee may "equitably adjust[ ]" the pool of shares underlying the 2003 Plan. When pressed at oral argument regarding whether this discretion was itself a violation of Item 10, plaintiff's counsel stated that the phrase "equitably adjust[ ]" is a term with settled meaning which does not give unfettered discretion to the Compensation Committee.

Shares covered by an Award will not count against the shares available for issuance under the 2003 Plan until they are actually issued and delivered to a Participant. If an Award granted under the 2003 Plan lapses, expires, terminates or is forfeited, surrendered or canceled without having been fully exercised or without the issuance of all of the shares subject to the Award, the shares covered by such Award will again be available for use under the 2003 Plan. In addition, shares that are (i) tendered by a Participant or retained by the Company as payment for the purchase price of an Award or to satisfy tax withholding obligations, (ii) covered by an Award that is settled in cash, or (iii) reacquired by the Company on the open market using cash proceeds received by the Company from the exercise of Stock Options, will be available for issuance under the 2003 Plan.

Seinfeld sued the defendants-appellees in October 2003, asserting that (1) the proxy statement violates Item 10 of SEC Rule 14a–101, which governs proxy statements relating to cash or noncash compensation plans, and (2) the proxy statement is materially misleading under SEC Rule 14a–9. The defendants-appellees moved to dismiss on December 22, 2003. On May 17, 2004, the district court granted the defendants-appellees' motion. The district court concluded that Item 10 does not require a proxy statement to disclose the number of options that may be granted under a compensation plan, and ruled that the proxy statement is not materially misleading. For the reasons stated herein, we affirm.

## Discussion

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted. *See Resnik v. Swartz,* 303 F.3d 147, 150 (2d Cir.2002).

■ Seinfeld first argues that the proxy statement violates Item 10 of SEC Rule 14a–101, which specifies the information that must be included in a proxy statement describing a cash or noncash compensation plan. 17 C.F.R. § 240.14a–101 (Item 10). That rule requires such a proxy statement to set forth, *inter alia,* "[t]he title and amount of securities underlying such options." *Id.* (Item 10(b)(2)(i)(A)).

Attempting to skirt the straightforward language of the regulation, Seinfeld contends that we should read the term "amount of securities underlying ... options," *id.,* to mean "amount of options." She urges us to make this logical leap and then conclude that the proxy statement was deficient in that it failed to inform investors that a potentially limitless number of options could be issued under the Plan. We reject this argument. When Item 10 is intended to refer to options, it uses the word "options." The regulation states that, "[w]ith respect to any specific grant of or any plan containing *options,*" a proxy statement must disclose "[t]he prices, expiration dates and other material conditions upon which the *options* ... may be exercised," as well as "[t]he consideration received or to be received by the registrant or subsidiary for the granting or extension of the *options.*" *Id.* (Item 10(b)(2)(i)) (emphases added). Moreover, when the regulation is intended to require disclosure of the *amount* of options, it again uses a form of that simple, straightforward term: "amount of options." In effecting its requirement that option compensation information be disclosed separately for certain individuals, such as executive officers and directors, the regulation requires the proxy statement to "[s]tate separately the amount of such options received or to be received by the following persons if such benefits or amounts are determinable." *Id.* (Item 10(b)(2)(ii)). This individual listing requirement, which

clearly is intended to require the disclosure of the amount of options to be granted to each individual where determinable, does not use the term "amount of securities underlying options." *Id.* Thus, we cannot conclude that, in stating its general option disclosure requirement, the regulation used the term "amount of securities underlying ... options," *id.* (Item 10(b)(2)(i)(A)), to mean "amount of options."

Instead, this term should be interpreted according to its plain meaning under the regulation. *See Resnik,* 303 F.3d at 151 (interpreting SEC compensation disclosure regulations and stating that "[i]n interpreting an administrative regulation, as in interpreting a statute, we must begin by examining the language of the provision at issue."); *N.Y. Currency Research Corp. v. Commodity Futures Trading Comm'n,* 180 F.3d 83, 92 (2d Cir.1999) (stating that "[c]onstruing a regulation is similar to interpreting a statute," and that "[o]ur first task is to ascertain the plain meaning" of the regulation). Item 10 plainly requires the disclosure of those securities that could be issued to satisfy Boeing's obligation to deliver shares under the Plan when an option-holder exercises options.

Here, the proxy statement informs investors that "[t]he aggregate number of shares of Boeing stock available for issuance under the 2003 Plan will not exceed 30 million." The proxy statement further explains that this number may be increased by three million shares if Boeing acquires another company. The Plan itself is attached to the proxy statement, and contains similar language. This disclosure adequately informs investors of the amount of securities that could be issued

to satisfy Boeing's obligation to deliver shares under the Plan when an option-holder exercises options.

Seinfeld argues that we should ignore the straightforward language of Item 10, based on recent changes in accounting standards. According to the Verified Amended Complaint, Statement No. 123 of the Financial Accounting Standards Board ("FASB") suggests that the economic consequences of granting options are best accounted for at the time of grant, and not the time of exercise. Seinfeld seizes on this standard to argue that shareholders are no longer concerned merely with the issuance of new shares when options are exercised, but instead, must be informed of the amount of options that could be granted under a compensation plan.

This Court has rejected this argument previously, however. In *Resnik,* a case in which the plaintiff was represented by the same lawyer representing the plaintiff at bar, this Court considered whether a proxy statement describing a stock option plan for non-employee directors was misleading because it did not disclose the grant-date value of stock options proposed to be awarded. *Resnik,* 303 F.3d at 149. This Court, affirming the district court's dismissal of the complaint, concluded that FASB Statement No. 123 "does not purport to address the requirements for reporting proposed compensation in a proxy statement."[3] *Id.* at 153. We see no reason to depart from *Resnik*'s holding here. It remains true that technical accounting standards governing the appropriate timing for recognition of revenues and costs simply do not change the SEC's straightforward regulations, including those laid

---

3. Indeed, in her reply brief, Seinfeld acknowledges that *Resnik* held that the accounting principles "expressed in FASB 123 did not require disclosure in a proxy statement seeking stockholder approval by directors of the multi-million dollar stock options that they granted to themselves," and Seinfeld similarly acknowledged FASB 123's inapplicability during oral argument.

out in Item 10, governing proxy statement disclosure.

For these reasons, we conclude that the proxy statement does not violate Item 10 of SEC Rule 14a–101.[4]

Seinfeld claims to have a distinct second argument: that the proxy statement's limitation on the shares available for issuance under the Plan was materially misleading in violation of SEC Rule 14a–9. That rule provides that a proxy statement may not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9. Omission of information from a proxy statement is actionable "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *Resnik*, 303 F.3d at 151. To succeed on a Rule 14a–9 material omission claim, "the plaintiff must show that there was 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir.1993) (quoting *TSC*

*Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

Again, the proxy statement declares that the "number of shares of Boeing stock available for issuance under the 2003 Plan will not exceed 30 million," except that this number may be increased by 3 million if Boeing acquires another company. Seinfeld claims that this statement was misleading because it failed to state that the number of options that could be granted under the Plan was essentially unlimited. As counsel for Seinfeld acknowledged at oral argument, however, this argument is based on a premise similar to the first argument: that the terms "shares available for issuance under the Plan" should be read to have the same meaning as "options available for issuance under the Plan."

The language of the proxy statement is clear. The 33 million number limits only the shares that could be issued to satisfy Boeing's obligation to deliver shares under the Plan when an option-holder exercises options. Moreover, other language in the proxy statement highlights the fact that the number of options that might be issued under the Plan was not constrained by the Plan's limitation on the number of shares. The proxy statement explains that "[s]hares covered by an Award will not count against the shares available for issu-

---

**4.** Seinfeld also makes an argument based on Item 20 of Rule 14a–101. Item 20 states: "Other proposed action. If action is to be taken on any matter not specifically referred to in this Schedule 14A, describe briefly the substance of each such matter in substantially the same degree of detail as is required by Items 5 to 19, inclusive, of this Schedule ...." 17 C.F.R. 240.14a–101 (Item 20). In addition to stock options, the Plan provides for the award of "stock appreciation rights" and certain other benefits that are apparently different from stock options. Supplementing her claim regarding the disclosure relating to stock options, Seinfeld asserts that the proxy statement's treatment of stock appreciation rights and other awards was inadequate, because Item 20 required that they be addressed as provided for in Item 10. However, this argument fails for the same reason Seinfeld's argument regarding stock option disclosure fails: the proxy statement discloses the number of shares permitted to be issued for all of these awards, and makes clear that the limit on shares available for issuance in support of awards does not constrain the number of awards that might be granted, thus satisfying the requirements of Item 10.

ance under the 2003 Plan until they are actually issued and delivered to a Participant." This language further states that "[i]f an Award granted under the 2003 Plan ... terminates ... without the issuance of all of the shares subject to the Award, the shares covered by such Award will again be available for use under the 2003 Plan." If there were any doubt, this language makes evident that the number of options that could be granted under the Plan might greatly exceed the number of shares available for issuance. Thus, any specific disclosure that the number of options that could be granted under the Plan was unlimited would not " 'have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " *United Paperworkers*, 985 F.2d at 1198 (2d Cir.1993) (quoting *TSC Indus.*, 426 U.S. at 449, 96 S.Ct. 2126). For these reasons, the proxy statement was neither false nor misleading in violation of Rule 14a–9.

## CONCLUSION

Accordingly, the district court's May 17, 2004 order granting the defendants-appellees' motion to dismiss is AFFIRMED.